LESTER R. and MARJORIE L. WESTPHAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westphal v. Commissioner
Docket No. 7237-93
United States Tax Court
T.C. Memo 1994-537; 1994 Tax Ct. Memo LEXIS 545; 68 T.C.M. (CCH) 1038; October 25, 1994, Filed *545 Decision will be entered for petitioners. For petitioners: Joseph P. Alexander and Stephen L. Kadish. For respondent: Anita A. Gill. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined, for petitioners' 1989 and 1990 tax years, respectively, deficiencies in Federal income taxes of $ 3,214.73 and $ 4,924.07. The sole issue for decision is whether the activity of Marjorie L. Westphal (petitioner) in the practice of law during the years at issue was an activity not engaged in for profit under section 183. Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and incorporated herein by reference. Petitioners, husband and wife, were legal residents of Carefree, *546 Arizona, at the time their petition was filed and at the time of trial. This case was tried, however, at Cleveland, Ohio. In 1974, petitioner entered Case Western Reserve University Law School at Cleveland, Ohio, and graduated in May 1978. At the time petitioner entered law school, she was approximately 34 years old with three young children. Petitioner entered law school with the intention of practicing law because she believed it provided the best use of her talents, it would provide her with a source of income, and it would allow her to follow in the footsteps of other members of her family who were prominent in the legal profession. While in law school, petitioner had a special interest in the tax area and took all of the tax courses offered in the law school curriculum. During her last year of law school, petitioner clerked with a Cleveland law firm, where she had the opportunity to obtain practical experience in estate planning and drafting wills and trust documents. After passing the bar examination and being admitted to the Ohio bar in 1979, petitioner obtained a position with an organization that sponsored an initiative to place on the statewide ballot a proposal for *547 the merit selection of judges in Ohio. Petitioner's primary motivation in working for this organization was the expectation of obtaining a full-time legal position through contacts she expected to make with people involved in the referendum. In 1980, petitioner was hired as an associate with a Cleveland law firm. Her primary responsibility was the firm's estate planning practice and a variety of tax and probate matters. She left the firm after 1 year. After leaving the law firm, petitioner attempted to develop and market a rival publication to the Yellow Pages telephone directory and assisted her husband in another business venture. During this time, she took courses in the graduate tax program at Cleveland State University School of Law. In 1984, petitioner began to seriously consider opening her own law practice. She had been unable to find a satisfactory, permanent legal position. Prior to opening her practice, petitioner discussed the matter with several practitioners. She also reviewed books and publications provided by the American Bar Association on starting a solo practice. To start up her law practice, petitioner borrowed funds from a trust set up for her children. *548 She entered into an office-sharing arrangement with a small law firm in downtown Cleveland. Petitioner selected this arrangement for several reasons. The rental cost for the office space was relatively low, starting at only $ 450 per month, and petitioner would only pay for secretarial services as needed. The downtown office location allowed petitioner to be close to the probate courthouse and was in the center of things. The office had just been renovated. The law firm was using computers, and petitioner anticipated the possible need to connect her computer to that system at some point. The firm had an extensive library, including a reporter system, that was available to petitioner. Petitioner, however, subscribed to specialty publications for her practice that were not in the firm's library. Finally, petitioner chose the office arrangement with the law firm because an accounting and tax service also had a similar office arrangement with the firm. Since petitioner expected to specialize in estate planning and tax law, she envisioned the possibility of referrals from the accounting and tax service as well as the use of the firm's library. Petitioner furnished her office *549 primarily with furniture from her home, other than a new desk and chair that she purchased. Her office was equipped with a computer and printer, which allowed her to perform her own secretarial work, including typing her own correspondence. Petitioner carried insurance on her office furnishings and equipment. At the time she began her law practice, petitioner sent out announcements. From the beginning and through the years at issue, petitioner had both a yellow page and a business listing in the telephone directory, obtained her own personalized stationery, business cards, and envelopes, and occasionally sent out holiday greeting cards. Petitioner's name was on her door, the office suite door, and the lobby directory in the office building where she was located. Petitioner maintained records of her practice, and respondent has not questioned the accuracy of her records with respect to the substantiation of the income and expenses she reported. Petitioner maintained a separate bank account for her practice and did not commingle those funds with her personal funds. Petitioner carried professional liability, or malpractice, insurance to cover any liabilities arising out of her *550 law practice. Petitioner typically arrived at her office 4 or 5 days each week between 9:00 or 9:30 in the morning and left between 5:30 and 6:00 in the evening. Petitioner usually did not work evenings or weekends, but did so if necessary. Her vacations were limited to 2 to 3 weeks during the course of the year, taken approximately in 1-week intervals. Since she opened her law practice in 1985, petitioner has not been employed and has not engaged in any other trade or other income-producing activity, other than passive investments. During the course of the day, petitioner spent her time in meetings or on the telephone with clients, or with client matters, researching issues, drafting documents, developing form documents for future use, attending an occasional seminar, attending periodic lunches held by the estate planning section of the Cleveland Bar, the Estate Planning Council, and other Bar committees, keeping current by reading legal journals and the updates to the subscription services, performing her own filing with the courts, and consulting with other attorneys on pending matters. Petitioner attempted to develop a specialty in taxation and estate planning but was willing *551 to accept cases of most any nature that she felt competent to handle, as evidenced by her active client lists for 1989 and 1990. Petitioner established a basic billing rate of $ 75 per hour for her services, eventually increasing to $ 80 per hour, then $ 100 per hour. She occasionally negotiated a lower rate based on the client's ability to pay. Petitioner was on the client referral lists for the Cleveland Bar Association Lawyers Referral Service, Women's Space, the Guardian Ad Litem program, and the Cleveland Bar Association Volunteer Lawyers for the Arts. The billing rates for these referrals were often dictated by the referral source. On obtaining a new client, petitioner generally obtained a retainer and a signed retainer agreement in order to secure collection of at least a part of her fee. Since petitioner was a fairly new attorney, she was often reluctant to bill for the full amount of her time, especially for her research and drafting time that was often two to three times more than the amounts reflected on her bills. Petitioner, however, always billed her clients for conferences and telephone calls. In 1989, petitioner initiated a collection action against one client *552 who had not paid a bill. In the same year, petitioner petitioned the Probate Court for additional fees in a guardianship matter, for which petitioner performed a substantial amount of work. The increase in fees was granted by the court. Petitioner developed and maintained her practice skills through attendance at seminars and reading practice journals and texts. She also attended a conference on Women as Rainmakers and consulted with other lawyers and maintained a network of contacts through professional and community organizations. Petitioner was listed in Who's Who in American Law, Martindale-Hubbell, and was a member of the American Bar Association, the Ohio State Bar Association, the Cleveland Bar Association, and the Estate Planning Council of Cleveland. Through these organizations, petitioner provided pro bono services in order to gain experience in the various practice areas, to obtain at least some clients, and to be active in the legal community. Petitioner was fairly active in the Volunteer Lawyers for the Arts (VLA) section of the Cleveland Bar Association and was the featured speaker at seminars sponsored by the VLA in both 1988 and 1989. The Ohio Bar Association *553 has a service known as the Ohio Bar College, which is an honorary distinction given to attorneys who are members of the Ohio State Bar Association, and who have attended at least 24 hours in continuing legal education during the course of 1 year. Petitioner was an Ohio Bar College member in 1989 and 1990. Being a member of this service not only allowed petitioner to increase her skills and have some distinction, but provided petitioner, as a member, a 15 percent reduction in malpractice insurance through Ohio Bar Liability Insurance Company. Petitioner was also a member of various civic and community organizations, including Women's City Club and Women's Community Foundation, allowing petitioner the opportunity to meet possible sources of referrals or clients. In 1988 and early 1989, frustrated over the lack of a growing client base, petitioner began to seek out job opportunities with other law firms. Petitioner was interested in obtaining an "of counsel" position with an established law firm that would enable her to retain the clients she had developed. Although petitioner had discussions with two law firms, neither resulted in a satisfactory position for petitioner. Soon *554 after these discussions, petitioner's father became ill, and she was required to care for him. Due to her father's illness and subsequent death, petitioner was away from her office in 1989 and 1990 much more than in earlier years. After petitioner's father's passing and the subsequent death of other family members and friends, petitioner became severely depressed and did not feel capable of engaging in her former active networking style for meeting new clients and promoting her practice. She did, however, maintain her pending client matters as well as her office arrangement. In 1989 and 1990, petitioner had 23 active clients to whom she continued to provide services. On her 1989 and 1990 Federal income tax returns, petitioner reported her law practice as a trade or business on Schedule C, Profit or Loss From Business. She reported the following income, expenses, and losses: 1989 1990 Gross income
$  4,824,61 $  1,886.19 Expenses
23,905.56 25,334.13 Net loss
($ 19,080.95)
($ 23,447.94)
In the notice of deficiency, respondent disallowed the losses for both years on the ground that the expenses incurred "in connection with your law practice were not for *555 an activity entered into for profit". As noted earlier, respondent did not adjust any of the individual items of income or expense. Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(b)(1), however, provides that deductions that are allowable without regard to whether the activity is engaged in for profit shall be allowed, and section 183(b)(2) provides that deductions that would be allowable only if the activity were engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Therefore, to determine whether an activity is not engaged in for profit, section 183(c) must be read in conjunction with section 162, which specifies allowable deductions for trade or business expenses. Section 162 applies when a taxpayer's *556 basic or dominant motive is to realize a profit or taxable income from the activity. Hirsch v. Commissioner, 315 F.2d 731, 737 (9th Cir. 1963). The taxpayer's expectation of profit need not be a reasonable one, but there must be a good faith objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). The determination of whether the requisite profit objective exists is to be resolved on the basis of all the surrounding facts and circumstances of the case. Sec. 1.183-2(b), Income Tax Regs; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Greater weight is to be given to the objective facts than to the taxpayer's mere statement of his intent. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra at 645. Petitioner has the burden of proving that she had the requisite intention, and that respondent's determination *557 that the activities were not engaged in for profit is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). While the focus of the test is on the subjective intention of the taxpayer, objective indicia may be cited to establish the taxpayer's true intent. Sec. 1.183-2(a), Income Tax Regs.Section 1.183-2(b) sets forth a nonexclusive list of nine factors to be considered when ascertaining a taxpayer's intent. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or of his adviser; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. These factors are not merely a counting device where the number of factors for or against the taxpayer is determinative, *558 but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no one factor is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax. Regs.
The fact that a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner conducted her law practice in a manner customary to other solo practitioners. In establishing her practice, petitioner carefully selected an office arrangement that would allow her to minimize her costs while having professional, tasteful surroundings. Petitioner had access to an extensive library as well as tax reporting services. Petitioner maintained insurance on her office furnishings and computer equipment and malpractice insurance. Petitioner *559 normally maintained regular business hours and limited her vacations. She was not gainfully employed in any other trade or business. She maintained her business records in a businesslike manner. She established billing procedures and occasionally obtained retainers from her clients. In one instance, petitioner initiated a collection action against a client for an unpaid fee. She also sought, with success, an increase of fees in a guardianship matter. Unlike Cohen v. Commissioner, T.C. Memo. 1984-237, relied on by respondent, petitioner made every effort to make it known that she was an attorney available to represent clients. Petitioner sent out announcements, maintained both a Yellow Page and business listing in the telephone directory, used personalized stationery, business cards, and envelopes, and sent holiday greeting cards. Petitioner's name was listed on her office door, the suite door, and the lobby directory in the building where her office was located. Petitioner maintained listings in Who's Who in American Law and in Martindale-Hubbell, and membership listings with the national, State, and local bar associations. Petitioner also *560 attended continuing legal education seminars, maintained listings with several referral services, attended luncheons, and participated in civic affairs and organizations. Three attorneys who had the opportunity to observe petitioner's practice testified at trial. Each of these attorneys felt confident in petitioner's abilities and admired her professionalism. In fact, one of these attorneys referred clients to petitioner and was satisfied with the results she produced. All of these factors demonstrate that petitioner conducted her practice in a professional, businesslike manner. The expertise of petitioner in operating the activity is another factor to be considered. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner was an attorney, she was a member of the bar, her prior history included work as a law clerk and as an associate for a brief period with a law firm, and she took continuing legal education courses to maintain her standing with the bar. An additional factor to be considered is the amount of time and effort expended in carrying on the activity. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner devoted substantial time and effort to building her law practice. Petitioner's *561 law practice was a full-time job for her. She normally maintained regular office hours and performed the typical functions of a solo practitioner. This fact distinguishes petitioner's case from others which have considered whether an attorney is engaged in the practice of law for profit. See Sloan v. Commissioner, T.C. Memo. 1988-294, affd. without published opinion 896 F.2d 547 (4th Cir. 1990) (where the taxpayer worked full time as a computer analyst for the Department of Justice and worked in his law practice only on weekends), and Owen v. Commissioner, 23 T.C. 377 (1954) (where the taxpayer worked as a full-time attorney with the Department of Justice in Washington, D.C., and maintained a law office in North Dakota, from which no legal services had been performed in the years at issue). Respondent contends that petitioner did not devote a sufficient amount of time to her practice to make it profitable. Respondent focuses on the number of billable and pro bono hours that petitioner had for the years at issue. Although petitioner's billable hours for the years at issue are not extensive, *562 the billables do not reflect the actual amount of time she spent on her cases. As a new attorney, petitioner was reluctant to bill clients for the full time she spent researching or drafting, but generally billed clients for the full amount of contact time, such as for client meetings or telephone calls. Petitioner accepted pro bono work and reduced fee arrangements as a means of gaining practical experience and a potential source of paying clients. Petitioner acknowledges that, in 1989, she spent less time in her office than in earlier years. Petitioner spent some time searching for job opportunities with other law firms. Petitioner was also away from her office because her elderly father became ill, and she was required to care for him. The fact that petitioner spent time away from her office while caring for her father during what was his last illness is quite understandable. When her father died later in 1989, petitioner not surprisingly experienced some depression. Despite all of this, petitioner maintained her pending client matters. Finally, the Court must also consider petitioner's history of income or losses with respect to the activity. Sec. 1.183-2(a), Income *563 Tax Regs. A history of losses with respect to the activity may indicate lack of a profit objective. Sec. 1.183-2(b)(6), Income Tax Regs. However, this factor alone is not determinative of whether petitioner had the requisite profit motive. Petitioner gave much consideration in her decision to start her own law practice. Petitioner opened her law practice with the intention of deriving sufficient income to meet her expenses as well as generating some profit. It is not uncommon for new attorneys beginning a law practice to have a difficult time for a number of years, as was attested to by the attorneys who testified at trial. The Court finds on this record that, in light of the factors considered, petitioner's primary motive was to make a profit from her law practice. The court, accordingly, holds for petitioners. Decision will be entered for petitioners.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩